at all, argument not to see, 15 minutes per side. Mr. Winnick, Ms. Gaffney, you may proceed for the appellates. Good morning, Your Honor. May it please the Court, Daniel Winnick for the United States. One of the basic conditions of the government's willingness to pay for medical care under the Medicare and Medicaid programs is that the care be provided for the benefit of the patient.  free of financial conflicts. But here, taking the allegations as true, Dr. Hathaway in his practice continued referring patients to Oakland Hospital for surgery only because the hospital acceded to his threat that he would take those procedures away if they hired Dr. Martin. He used his patients as leverage, his word, quoted at paragraph 68 of the complaint, to advance his own financial interests. And that sort of financial conflict is exactly what the anti-kickback statute forbids. Courts have long recognized that because the government agrees to pay only for care provided free of financial conflicts, claims seeking reimbursement for financially conflicted care are false or fraudulent for purposes. What if one looks at the undisputed facts, or tell me if you think these are disputed, that there is a part of the case that looks like a misunderstanding, and the misunderstanding is the assumption that Dr. Hathaway is going to merge with LOI, whatever it's called, and move his referrals to the Battle Creek thing. So that was, whether you want to use the word rumor or misunderstanding or just whatever, once it's clarified that that's not true, why isn't that the reason that everything changes? The defendants are certainly entitled, if this case proceeds past a motion to dismiss, to try to prove that that account of the facts, but that account of the facts is not consistent with the narrative pleaded in the complaint. Where does the narrative deny what Dr. Hathaway knows from conversations with Oaklawn? I mean, there's no way the plaintiffs were participating in those conversations. That's not disputed. The narrative pleaded in the complaint is that Dr. Hathaway made a threat to the hospital, that he would take away his procedures, that he would take away his procedures if they hired Dr. Martin, and that the hospital then agreed not to hire him. I thought in the complaint they plead that he was planning to merge and then move, right? I thought that's part of their narrative, the plaintiff's narrative. It's certainly part of the plaintiff's narrative. And I'm saying that that gets corrected, and once that's corrected, why isn't that what, why everything goes back to the way it was going to be? I think, Your Honor, the complaint has a different understanding of the merger than defendants suggest in that brief. What the complaint says is he was planning to merge, he understood that the hospital was going to hire Dr. Martin, he understood that that would be a mortal threat to his practice as well as to his ability to merge, and that he then made a threat to the hospital. If you hire Dr. Martin, I will take all of my procedures away. Not, you know, sort of, it'll be economically difficult for me to continue in this area, and therefore, you know, much as I would like to, I won't be able to sort of practice here anymore. No, the threat was, I will take my procedures away from you, and the complaint then pleads that the reason the hospital decided not to hire Dr. Martin was that they didn't want to lose his referral stream. What's your best case in support of your position on this? So, Your Honor, I think there's a couple of cases we cite where courts have regarded similar cross-referral arrangements as violating the anti-kickback statute. So, for example, the Frye case, that was one where a hospital assigned cardiologists time in its cardiology station, in other words, an opportunity to earn referrals from the hospital in proportion to the referrals that the cardiologist... Is that a remuneration debate? Yes, the court regarded that as remuneration violating the AKS. Another example is the Southeast... So, just stick with that one. What did they say was the transfer? So, in that case, the remuneration going from each side to the other was from the cardiologist to the hospital, and from the hospital to the cardiologist was the opportunity to earn money on cardiac referrals from the hospital, exactly as in this case. That's exactly the same as the remuneration here from one side to the other, from Dr. Hathaway. If that counts as a cognizable form of transfer payment, why isn't Dr. Martin vulnerable? She was unaware, according to the complainant. No, no, no, but the whole thing is it goes both ways. I mean, you can't deny that feature of the complaint, that the whole premise of this is that Martin was referring her patients to the hospital for surgery, the hospital referring Marshall-based patients to her for eye services. I don't understand how, under this theory, she's not just as liable as Hathaway. So, a couple of things, Your Honor. First, both the AKS and the False Claims Act have SANA requirements. So, an innocent, you know, somebody who's unaware of the thing that makes the claims false or of the illegal kickbacks is not liable under either statute. Second of all, the referrals that she... You don't think she was aware of? Once you say this is a cognizable claim, I don't understand what you mean by knowing. Everybody knows that's what's going on. Well, Your Honor, I think actually the allegation here is that she didn't know about this deal between the hospital and Dr. Hathaway. In other words, she... Your Honor, no, no, she understands the relationship between the practice she was a part of and the hospital. If it's a Marshall-based patient, they needed surgery, they went to the hospital. Hospital has patients that need eye services, they're there for a liver problem, need eye services, they send it to this one practice nearby. And you're saying that's a cognizable anti-kickback agreement because a referral equals value, payment, transfer, remuneration. And I'm just saying I don't understand how she's not as liable as Dr. Hathaway. So I want to be crystal clear, Your Honor. The thing we regard in this case as creating the anti-kickback violation and the derivative false claims act violation is the explicit threat by Dr. Hathaway that he would take his procedures away from the hospital if they hired Dr. Martin. Absent that threat, if, as the amicus brief suggests, he just sort of gone to them and said, you know, I want to, you know, as your friend, give you advice, I think this is a bad idea. I don't think in that case you would have an anti-kickback violation because in that case... But the big issue here was whether the hospital was going to hire her, but other doctors, they just bring their patients in there and they practice within the hospital, but they're not on the payroll. And the only question that the hospital had was whether she was going to be put on the payroll, right? That's correct, Your Honor. She could still practice at the hospital, but not as a payrollee or whatever you'd call it, but an employee. That's true, Your Honor. The thing that made this an anti-kickback violation, though, was Dr. Hathaway's threat to take away his procedures if the hospital hired her. That threat and the hospital's agreeing to that threat by not hiring her is what constitutes the remuneration to both sides. And that's what creates the financial conflict in all of the procedures that follow. The premise of the anti-kickback statute is that doctors... So on causation, just one quick thing, just to make sure you get a chance on this. One causation trick, it seems to me, is the assumption that the hospital's in charge of all referrals for eye services. Why isn't there a break in the chain of causation with the actual doctors? I mean, the doctors have their own ethical obligations as doctors, and I suspect it would be very rare that there would be a situation where they would only send them to one, maybe one surgeon has a friend in Battle Creek, for example. So why doesn't that just break the chain of causation? Am I right? The hospital's not in charge of the referral practice. That's the doctor that makes the initial decision. You're there, and they say, it looks like you're having trouble seeing. I think you should go get your eyes checked out. I would recommend so-and-so. Why are we so sure it would always be to Hathaway and Martin under the old practice regime? So two points, one factual and one legal. The factual point is, according to the complaint, doctors at Oakland have a contractual obligation to refer in-house if there is somebody in-house. So according to the complaint, if they had hired Dr. Martin, they would have had to stop sending referrals to Dr. Hathaway. Is that a violation of the anti-kickback laws? No, I don't think so, Your Honor. It's not about the whole point. We're going to go to purpose now at another level of generality. What's in the best interest of the patient? If you're telling me there's a contractual obligation by working at a hospital only to send it to one doctor, how is that consistent with that level of generality of the statute? So, Your Honor, there's also safe harbors under the statute which can be created where the department... I've looked at all of them. They do not apply to what I just said. So, Your Honor, I actually don't know, regulatorily speaking, whether there is some sort of safe harbor from there or whether it's considered even to be a referral outside when it's all within the hospital. But I do want to stress here that as to the initial question Your Honor asked, the claims pleaded in the complaint with specificity are claims submitted by either Oakland or Dr. Hathaway's practice for the care of patients referred to the hospital. And so I think Your Honor can largely set to one side the other referral stream. What is most relevant from the perspective of the complaint as it stands is, was there remuneration going from the hospital to Dr. Hathaway and his practice in exchange for the referrals that he then sent to the hospital, which doesn't implicate the question Your Honor originally asked, because those are the reimbursement claims that are pleaded with specificity in the complaint. And so I do think there was clearly remuneration going from the hospital to him and his practice in exchange for those referrals. But I don't understand why the chain of causation isn't broken. That's my point. But because Your Honor's question was about referrals by doctors at Oakland, and my point is what's relevant here is the referrals by Hathaway and his practice to the hospital. In other words, the referral is going the other direction. So this is just a quid, but not a quo? No, the quo, Your Honor, is the decision by the hospital not to hire her, because that quo, that decision was what allowed referrals to continue flowing to him. Again, because of the contract. And the not hiring is remuneration under your theory? Not hiring is remuneration because had they hired her, the referrals to him would have stopped. What's the best case for not hiring being remuneration? I don't have another case, Your Honor, where a decision not to hire someone was remuneration. Is there a case, not hiring equals remuneration? So I've mentioned cases where referrals are remuneration, and here the other is remuneration. So that was the line of questioning? You decided not? Understand. You threw that overboard just now. So what is the case where not hiring equals remuneration? So let me be clear. We don't throw over the idea that referrals are remuneration. It follows here from the not hiring that he gets referrals. That's not a matter of decisions by Oakland doctors. It's a matter of the business decision by the hospital. If the hospital had hired her, the referrals to him would have stopped. Is there a case? I don't have a case where not hiring someone sort of was implicated. How bad? You know, one reason I understand why the government's here, and I quite appreciate the point, you can't do every one of these lawsuits. You have private individuals doing them, and you're like, wait a second, we want to make sure the law doesn't mess up our view of how it should be enforced. Like, that makes tons of sense here. What are the downsides that happen with the not hiring not being remuneration? That seems funny to me. I don't see a big slippery slope there is what I'm trying to get at, and I'm wondering what I'm missing. So, Your Honor, the district court's rationale was quite broad. No, no, stick with what I said. We've got a very specific point now. Not hiring potentially does not equal remuneration. Right? Potentially. We know there's no case law on it. So I'm just saying, if there's no case law on this, what's the big downside from your enforcement perspective? So from our enforcement perspective, Your Honor, it's quite important that remuneration is understood broadly as anything of value. We think it's pretty clear on the facts of the complaint pleaded here that the hospital gave him something of value when, by not hiring Dr. Martin, it allowed referrals to continue to him. We would be quite concerned about any holding inconsistent with that basic premise that remuneration is anything of value. If the court doesn't think that on the allegation of Dr. Martin, I'm assuming there's no causation in this setting. That's a hard question, Your Honor. Both issues are quite important to the government. Remuneration is broadly understood. And on the facts pleaded here, I want to make sure as to causation, we have a brief chance to discuss the Eighth Circuit's rationale, which we don't think the court should reach. Just answer the question. I don't have an answer as to which is worse for the government. Both would be quite troubling and I think inconsistent with the law here and elsewhere. Remuneration is anything of value and this complaint pleads the requisite causal nexus between the alleged AKS violations and the allegedly false claims. Dr. Martin might have made more money as an independent contractor, right? That's what she is now. She might have? Sure. A lot of doctors don't want to be on the payroll. That may be true, Your Honor. But again, what's alleged here is that Dr. Hathaway perceived it to be a mortal threat to his business if they hired her. He threatened them with taking away his procedures if they did. They acceded to that threat and gave him something of value in exchange for his giving something of value. That's an AKS violation. Why isn't Block 4 causation required? Why isn't it required? So let me answer that. Let me just briefly stress the court doesn't have to decide that because even if it's required, it's pleaded here. But as to why it isn't required, so the resulting from the language in the statute creates a factual causation requirement of some sort. We don't dispute that. But there's lots of standards of factual causation. The Supreme Court is clear about that in Burrage and Paroline. There can be both textual and contextual reasons why in any given context a standard other than but-for is the right standard. Here, there's both. The textual reason is that the AKS itself identifies the requisite form of causation that the remuneration is given to induce or received or solicited in return for the prohibited conduct. When that happens, when remuneration is given to induce referrals or the provision of items or services, and those intended results then come to pass, it makes perfect sense to say that for False Claims Act purposes, they result from the kickback because a claim seeking reimbursement for that care is categorically a claim the government hasn't agreed to pay for. That's what makes it false or fraudulent. So it's the position that every claim after Dr. Martin wasn't hired was caused by the alleged AKS violation? That every claim, yes, is in the relevant sense caused by is false for purposes of the False Claims Act. And I'd note that we don't think just the temporal connection is enough. So in the Greenfield case, for example, the Third Circuit said in that case a pharmacy was alleged to have given remuneration to some charities to recommend its services. And the court said if patients later came to the pharmacy with no evidence that they had ever seen the improper recommendations, that doesn't have the requisite nexus. The government urged the Third Circuit to reach exactly that result. But here the allegation is that the remuneration was given. Everybody, the people making the relevant decisions knew about it and exactly the intended results followed. And in that case, there certainly is the requisite causal nexus whether or not but-for causation is required. And again, we don't think the court needs to decide that question. We don't think it should decide that. Do the words resulting from and remuneration have the same meaning for civil and criminal application of the two statutes? Resulting from doesn't have a criminal application, that is relevant only to connect the AKS violations to FCA violations. So there's no scenario in which that could have criminal application? Not in that particular provision of the statute. I mean, resulting from is used lots of times in the U.S. Code. No, no, no, but in this one. Okay, so remuneration, does it have the same meaning for the civil and criminal application? Yes, it does. Yes, because that's in the AKS itself. The AKS is a criminal statute. So under the AKS, if you give remuneration to somebody to induce referral... Why isn't that a reason to give it a narrower rather than a broader interpretation? I mean, you know, certainly to the extent there's a genuine ambiguity in a criminal statute after looking at all tools of statutory construction, you apply the rule of thumb. You don't think there's any ambiguity here? No, Your Honor, courts since the beginning... Anything of value? Since the beginning have understood that to be very broad. That's clear from the plain meaning of remuneration. It's clear from the statute. Why can't I call it an ambiguity? Any is broad. I'll call remuneration broad. But if you just go to the dictionaries, most of them are going to refer to payments or transfers. You're not going to see the anything of value. That's not the normal way it's put. But let me grant for the sake of argument that that is one way to think about it. But why isn't that an ambiguity? In other words, most people, when they use the word, talk of it in terms of payments or transfers. The anything of value is what strikes me as the ambiguity in the case and what makes the case hard. And I'm not sure I don't know which canon, which case, which dictionary definition eliminates all that. I'd note two points, Your Honor, about the text and the history of the statute. So the first is to the text of the statute. It goes on to say... I just want to make sure you can say what you want to say, but start the sentence by saying it is not ambiguous because... It is not ambiguous because the statute goes on to say in cash or in kind, overt or covert. So when you talk about a payment or transfer, it can be in cash or in kind. Here the referrals to either side was in kind. So this is in kind transfer? Yes. Is that what you're saying? Yes, it's the opportunity to earn money. But in a quite direct way, by giving a referral to an ophthalmologist, the hospital is saying, here's an opportunity to earn money from this patient. That's a pretty direct payment of value. I think it's really hard to find something that says not hiring somebody is remuneration. That's what I think is difficult and why I think there's an ambiguity. So, Your Honor, look. If the court doesn't think on the facts pleaded here that the not hiring alone is a thing of value, but referrals in other contexts would be a thing of value, I think sort of that doesn't sound like something that would give the government great trouble because I think it's fairly case-specific. I do think on the facts here it's alleged that the not hiring gave him value, but it's quite important to us to make, to hew to the basic point that remuneration is anything of value. And the last thing I was going to add, I made the textual point in response to Your Honor's question. There's also a point about the history of the statute, not legislative history, just sort of how the statute evolved, which is that the AKS started with the language kickback, bribe, or rebate, and then a few years later Congress added the word remuneration, including any kickback, bribe, or rebate. Precisely, I think it's clear just from the face of it, to make clear that they wanted it to be encompassing, not just to be anything you could understand as a kickback, bribe, or rebate, but to use the broader word remuneration, which, as Your Honor noted, can be any kind of payment or transfer in cash or in kind, overt or covert. I mean, they couldn't have used much broader language than that. And so, again, we think the complaint pleads that the not hiring had the implication of giving him something of value. And, you know, if the court were to reach any different conclusion, it would just be important to us that it be consistent with the premise that remuneration is anything of value. And if the court doesn't think the not hiring gave him value, you know, that would be case specific. But, again, it's essential to the government's interest that remuneration is anything of value. Okay, thank you very much. Thank you, Your Honor. It sounds like we still have people on this side of the case. So let's hear from your, I guess it's not co-counsel, but someone sharing a position. Hello. Good morning, Your Honor. Chief Judge, may it please the court, Julie Gaffke appearing with co-counsel Christopher Zdarsky on behalf of the relators who are the appellants in this case, Shannon Martin and Douglas Martin. The relators concur with the arguments by the government regarding remuneration and causation. Relators focus on why the district court erred in granting the dismissal in this case because, one, relators state with specificity and state with particularity a plausible anti-kickback statute violation, which is also referred to as AKS. The second reason is the complaint pleads characteristic claims resulting from the AKS violation. So what's your best argument for remuneration covering not hiring somebody? How do you think about that? Do you basically have the same view or do you have anything you want to add on that point? The best argument, Your Honor, is that the remuneration equals value. The hospital knew that not hiring Dr. Martin would be valuable to Dr. Hathaway in South Michigan. And he made that clear. Dr. Hathaway said it would be the death knell of his practice. That is pled in the complaint. Also pled in the complaint is the fact that not hiring Dr. Martin had significant value because paragraph 62 states, if Oakland hires an ophthalmology service line contractually, all of the Oakland providers will have to send their referrals to that person. That's what is pled in the complaint. That shows that it had value to Dr. Hathaway. Dr. Hathaway is explicitly telling the Board of Director members through a letter and then through individual conversations, which are outlined in the complaint, that... So help me with what's... I feel like both sides have slippery slope problems. And the slippery slope problem on your side is hospitals that want to lure people to come work for them. So they do things of value to these doctors that might, say, move to a rural area. They decide to invest millions of dollars in a surgical center. They agree to give money to charities that the doctors in the community like. So they do these, or they upgrade this or that within the hospital. There's definitely a quid pro quo going on there, right? I mean, this is what makes the doctor think this is a good idea, both as a matter of treating patients, but also as a matter of earning a living. It leads to hiring decisions. People come or don't come. And what I just can't figure out with this anything of value concept is it just covers so many things that I would have thought are very customary and no one is very troubled by. I don't think it's a bad idea when a rural hospital decides to upgrade, create a whole new wing so they can offer a surgery or some service that they couldn't before and they can, therefore, get the doctors to come. And the doctor says, I'm not coming unless you have this. Okay, threat. All followed by Medicaid, Medicare reimbursement. Are we really going to say these are criminal and civil violations? Not under this scenario you just described, Your Honor. The difference is the threat. And here's the scenario that would change that to... You guys keep doing the same thing. You want to upgrade the thing of value by saying how bad it is because there's a threat here. But you have to live with anything of value. That's your theory, anything of value. Not anything of value accompanied by a threat. It's anything of value. Well, also in the statute it talks remuneration to induce the patient referrals. And so the inducement, Oak Law knows that in order to induce the referrals, the medical referrals for surgeries... I'm going to give you as explicit as it gets. The doctor that refers people for surgeries says explicitly in a letter to the hospital, I will not continue to refer my patients for kidney dialysis unless you get the new machine. Because the machine you're using is not state of the art. I'm only recommending state of the art for my patients. Until you get it, we're going 50 miles away in the other direction. I'd rather do it here because you're 20 miles away. It couldn't get more explicit. And you're saying that's a kickback? And so if the hospital does get the machine that the doctor has threatened he or she will not send business unless the hospital gets that machine, then the hospital is doing that to induce the patient referrals which are reimbursed through the federal programs. It's a criminal and civil violation, my fact pattern. Because you're leveraging... The claims that are submitted to the federal government have now been leveraged and compromised and brought about through a quid pro quo relationship, which the federal government and the statutory purpose has been... I cannot insist that I'm not going to send my patients for kidney dialysis unless you have the better machine. That's an inappropriate conversation. So advocating for that machine... What's the case that covers the fact pattern I just gave you? So the doctor is looking out for the patients. The doctor is saying I want state of the art for kidney dialysis. This is not it. Until you have it, I'm just... Yeah, it's farther. They have to make this trip two or three times a week. But that's what I'm doing because I don't want them dying. Your Honor, is it okay if I answer your question?  It is okay for a doctor to say I want this piece of machine. It will be the best for my patients. It is not okay for a doctor to say I'm going to threaten you, hospital, that if you don't purchase this piece of equipment, which costs money. And that is like making a payment. How about if the threat is worded without the word threat? It's like I'm not going to allow my patients to die anymore with your non-state of the art kidney dialysis. I would say the threat is it's the hospital threatening to kill people or this crazy statute if this is how it's going to be interpreted. The difference, Your Honor, is you're talking about patient care. And the doctor, again, is saying this is the best piece of equipment for my patients. Yes. In this scenario, Dr. Hathaway is... No, no, no. I'm trying to figure out what happens to my hypothetical. My hypothetical is you can call it a threat. Like for 12B6 purposes, it counts as a threat. And I'm just saying I can't understand that. Because what you could characterize as a threat is just as easily characterized as I'm tired of my patients dying with this non-state of the art kidney dialysis. If the purpose behind the hospital getting that piece of equipment is solely to get an exchange of patient referrals, to induce the patient referrals, then it is then an AKS violation. Because now the claims that are submitted to the federal government are claims that have been leveraged throughout the years. Through threats, through a situation where a large sum of money has been paid for this piece of equipment to satisfy a threat. So a request for a piece of equipment is different than if you don't buy me this, then I'm not going to send you any patient referrals. We're just not doing kidney dialysis. We're doing kidney dialysis in the best machine. It's a threat. It should be a threat. I can't imagine a doctor who thinks their patients are going to die with the old equipment not saying this is insane. I'm going the other place. If you want to think of it as a threat, go for it. I call it state of the art medical care and not liking my patients to die. But if you like thinking of it as a threat, go for it. The other part of that statute is the word induce. The inducement matters. If the inducement is for the referrals as opposed to patient care, if it's for the patient referrals, then it is an anti-kickback statute violation. If it's for patient care and not a quid pro quo for the patient referrals, then it's outside of the anti-kickback statute. Well, for 12B6 purposes, this would always survive. It should survive because what matters is what is being pled. And if what's pled is that there is something of value that is made... And then we just have this summary judgment debate about whether you did it because you cared about your healthier patients or you did it to increase your revenue. Which is an excruciating question. We're at the 12B6 stage, and so discovery certainly should be allowed in that circumstance to figure out if it's... I don't think you understood the point I was making. 12B6 means a ticket to discovery. What is the ticket to discovery going to be about? Whether this had a financial explanation or I want to save my patients from dying explanation. That strikes me as excruciating, which means we'll now have jury trials on it. Equally excruciating. Well, when you look at the plain language of the statute and you have something of value being given to induce patient referrals, and that's pled in the complaint, then an anti-kickback statute violation has been pled. And that is what is sufficient under 12B6. Thank you. We'll hear from the other side. Good morning. Good morning, your honors. May it please the court. I'm Jonathan Feld, and I represent Oak Lawn Hospital. Seated at council table with me is Mary Massarone, who represents Dr. Hathaway in this matter. During my eight minutes of argument, I'd like at the outset to point out that there are three separate grounds by which this court could affirm the district court's dismissal of the lawsuit below. Their lack of causation and failure to plead causation as required by Rule 9B with its particularity and characteristic examples. A failure to plead remuneration, as the district court also pointed out. And there could be a third ground which the court did not rule on below but addressed the information that was obtained in violation of HIPAA that's included in paragraph 119 of the complaint. And the causation argument is quite clear, your honors. In this situation, the relator, Shannon Martin, concedes that she didn't know or alleges that she didn't know of any kickback scheme. And given that concession in her complaint, there cannot be any causation. I mean, that's not the only, it's remuneration, right? There also is an additional argument on remuneration, and the district court correctly found that there was no remuneration in this case. Why isn't their theory that it's anything of value the way to think about it, and it is hard to deny that when Dr. Hathaway has this conversation, Dr. Martin's not hired, that's not of value to Dr. Hathaway. So why isn't that true for 12B6 purposes? The definition of remuneration, the district court did recognize the term anything of value, and she considered that. And she pointed out that there had been no benefits conferred on the hospital, and the value to Dr. Hathaway, absent some other condition, I would think is not remuneration. He's not getting any tangible money. All the cases, as this court has pointed out, there are no cases that address the failure to hire someone and how that might affect... That's why you're in the Court of Appeals. I mean, someone's got to decide that. Is there something that goes the other way on this point? Failure to hire is not remuneration? In other words, it proves they're wrong and you're right? We haven't seen any cases on the decision not to hire being not remuneration. No courts have addressed that. What they have addressed, and virtually every case that has been cited, including those by the appellants here, is the remuneration is some kind of cash payment or some kind of opportunity to participate in a financial transaction. It says cash or in kind. It does say cash or in kind. And here, what the plaintiffs, the appellants rather, are seeking is such an expansive definition of remuneration that it would interfere with the hospital's normal business activities. As the district court concluded, there was no evidence to show, no allegation to show that the decision not to hire Shannon Martin was the result of a scheme to induce some type of referrals. What about the government's argument that the Frye case suggests that a referral arrangement could be remuneration? In certain instances, there are referrals that could be remuneration, such as in the Vora case, which is cited by the relators, where there were payments for the number of lab tests that were ordered. Or the Frye case that they alluded to, where the ability to use the equipment or be on the heart station on a hospital was directly dependent on the number of referrals. You gave more referrals, you got more time on the cardiac floor. You gave fewer referrals, you got less time. Those types of situations, I think, are definitely anti-kickback violations. But we don't have that here. We have a traditional decision by a hospital about how to balance its resources and address the needs of the community. And also, what is trying to go on here, and is made clear by the Amici brief, is that the normal flow of patients back and forth between doctors is now trying to be converted into some type of remuneration that is illegal under the anti-kickback statute. But the hospital wouldn't have denied this contract with a plaintiff unless Dr. Hathaway had said, well, if you hire her, I'm not coming. I don't think that's clear from the allegations in the complaint. The hospital was going to be required to invest $2 million and at that time said, we're not prepared to do that. Under their scenario, the only way to avoid an anti-kickback statute when a doctor, in this instance Dr. Hathaway, voiced some opposition to it would have been to invest the $2 million into a practice regardless of whether they thought it was the right thing to do. In your example, Judge Sutton, a situation where there are two radiologists, for example, or two kidney specialists in your situation. One wants one type of machinery. One prefers another type of machinery. And they say, if you don't follow my decision and take the machinery that I want, I'm going to have to leave or I'm not going to be happy with you and I'll have my patients consider to go elsewhere. That happens all the time where a hospital has to balance the interests of its practice and of the needs of the community and its decisions about whether or not to have specialty in-house medical practice. And the anti-kickback statute under the expansive reading that the relators want to give to it would now throw all those decisions into that thicket and that can't be the intent of the statute which was to have medical care... But you seem to acknowledge that a cross-referral arrangement could violate the statute. And I'm trying to figure out what that line is because I'm inclined to agree with you that if you were to find lots of general practitioners, they have, whether you want to call them friendships, people they know are good, but if you were to just in discovery find out where they sent their patients, what the recommendation was for this service, it would either be the same person every time or one or two. And let's just say that person's at a hospital and the referrals are when they say, I need someone for a checkup every year, it's going the other direction. What I take you to be saying and what I suppose distinguishes it from FRI is that kind of thing is okay and indeed it's even okay if they actually talk about it. What's not okay is when there's an explicit incentive that's aside from the cross-referral, like the incentive being, as you used the example well, in our hospital you can only have access to this floor if you can actually show the number of referrals. So it's not, is that the line? Generic, okay, but you violate the law the minute you specify the expectation of the number of surgeries and the number of referrals going the other direction? Is that how this works? I think it's often very case-specific, Your Honor. The minute I hear that, I'm like, okay, he's not going to tell me anything that will help me. Just try to help me. Right, I apologize for that. But I think that the normal flow of patients, as you've just described, between hospitals and other doctors can't be penalized under the anti-kickback statute. Why? I mean, I have that instinct, but I'm just not sure what to do with the statute. Because there's no other consideration other than the safety and the medical interest of the patient. If I am sending it to someone who I know to be the best cancer researcher for leukemia, and that's why I send my folks there, because I know that she has a high cure rate and that's what I'm doing, I'm only looking out for the interest of my patients. There's nothing dependent. What if it's a classmate in medical school? If it's a classmate in medical school? They didn't research. In fact, the person's not even rated in the top half. Well, I think that may be bad medical judgment, but it wouldn't be a kickback unless there's an agreement of something other than the traditional flow that I'm sending you a patient to consider. Your hospital's going to send people back for my general work. Right. I think we're going to the outer edges of the anti-kickback statute, and in certain situations it might be. But I think the general practice of, as long as there's not an agreement, for example, if Dr. Hathaway here at the hospital said, okay, we're not going to hire Shannon Martin, doctor, but you're going to agree to send us every referral, and that's in writing and you have to do that for five years. We don't have that allegation in this case. Or there was some limitation that no one could send their patients to Dr. Martin. That would be an anti-kickback violation potentially as well. But there has to be some other kind of financial benefit that's understood to happen, not just the normal course of business. And that's kind of the point that Judge Beckering was making clear, is that we have referrals that happen before October 26th and referrals that happen after October 26th, and it's the normal course of medicine. And that's what the hospital associations make clear. There are other ways to address that situation. They're just going to respond to that. Well, of course it was normal because they acceded to the threat. In other words, they think what was going on before was probably bad, but with the threat it's now a cognizable claim is the way they would put it. But I think the threat here is that traditional doctors voicing opposition to a certain policy of the hospital, the moment that the hospital either makes a decision that's either different or in accordance with that, one side or the other is now throwing that open to an anti-kickback violation. But in addition we have the causation argument, because I recognize remuneration and anything of value as you kind of begin to stretch it out can cover a lot of situations, but in this instance as well there was no causation. The only standard that the relators and the government want to use is that something happened after October 26th. None of the examples in the complaint of the 14 that are in paragraph 119, 11 of those are Shannon Martin's referrals and she admits or concedes or alleges that she didn't know about anti-kickback, so those can't be the result from anti-kickback. And the other three that relate to Dr. Hathaway, two of those are for procedures that had already taken place at the hospital and clearly it could be the convenience factor. I think we, anyway, I feel like we understand the point, so we'll let your co-counsel. Thank you very much. Good morning. Good morning. May it please the court, Mary Massaran on behalf of Dr. Hathaway. Let me just talk briefly about both the remuneration and causation. As the discussion thus far and the court's questions make clear, the definition of remuneration is somewhat of an open question. This court has not opined on it in anything approaching the facts here, so the court has the opportunity to clarify that whatever the line is, it doesn't extend to these ordinary business decisions and the discussions around them. What would your definition of remuneration be? I think the definition has to be something, a transfer of value. It's including kickback, rebate and bribe and those are very specific concepts in the law, so it seems to me remuneration, and I apologize for not having a buzzword phrase that could really help the court, but the definition has to be of like kinds of things and hiring someone or not hiring someone, it seems to me is qualitatively different from that. And the problem with that is it sweeps in a whole host of behaviors that Congress did not intend in the language that it adopted here. And I think the American Hospital Association brief makes that clear and Judge Sutton's hypo makes that clear. What you have here is a hospital about to make a decision based on inaccurate information, which Dr. Hathaway finds out about and tries to correct. He makes a number of statements that are his beliefs, concerns, opinions, anxieties about the potential impact of this hiring and also he makes a number of statements intended to correct the inaccurate false information about the impact of his negotiations with LOI to assure the hospital, no, this doesn't mean I'm taking all of my work elsewhere. It seems to me whatever the definition of remuneration is, it has to come in a narrower way or it's going to make it impossible for hospitals and medical providers to operate in the real world and to take into consideration these... I'm just thinking of Judge Mathis's question and your answer. First of all, I totally agree with your framing of it, that remuneration has to be of like kind to the three specifics. That's a classic move. But hiring, not hiring, that could come up in bribery, right? Hire me and I'll contribute. It's a public job, the county prosecutor, the county treasurer. If you hire me, I'll contribute a tenth of my salary to your campaign fund. If you don't hire me, I will contribute 10% to your opponent. I feel like we would all think that was a problem. So I'm not sure that we can say the hiring, not hiring is automatically out is what I'm worried about. It would have been nice, but I don't know if that's true. Right, I understand and that hypo is more problematic. Maybe it's the degree of explicitness, I don't know. I wish I had a fail-safe answer for that, but I don't. I will say, however the court frames it, it seems to me the starting point has to be those three words and it seems to me the factual example here is a textbook example of why it can't be so broad that it sweeps in this kind of activity. Let me talk about causation as well. I know the government wants you to stick with this tame theory, but I would urge the court, and we believe, I think properly so, that we would win under either theory. But it seems to me the but-for causation test is what the statutory language talks about and it offers an outer limit. Congress, when it was adopting broader language about remuneration and about kickbacks and trying to make it easier to pursue certain kinds of conduct that I think we could all agree is problematic in the healthcare field and other fields, put that language in there resulting from, which the U.S. Supreme Court has said in the context of other statutes, is not ambiguous. So the government is urging you to follow the analysis of a case which starts with legislative history in an effort to create an ambiguity. Is there a role for proximate causation? You usually think of that as going with but-for. You would say it's just but-for without proximate? It seems to me that resulting from encompasses or could encompass certainly both of those things. That it has to be a close enough connection that but-for the one thing, another would not have occurred. And when you look at that test, if you went back to law school days and you had the hypo of the train and the string of events, we would say that doesn't satisfy the test of resulting from because it's too far removed. And I think that's true here as well. I guess I was wondering if maybe resulting from took proximate cause off the table, that it really was just but-for. I don't know that the words give you the answer to that. It seems to me for sure the words say resulting from must at least be but-for. Do you have a best case to show that this conduct was not covered under the statute? I don't know any case where a court has looked at these kinds of facts to say this is a violation. And I think all of the facts, and a number of the other cases cited, the court has said there has to be more when you look at the cases where the court has found a violation. There's either money going back and forth, there's some opportunity to use facilities in a way that other people are not able to, so they lose money, or there's a binding agreement of referrals. You refer me this, I refer you that, which is much stronger than anything that's been alleged here. Okay, thank you for your argument. We appreciate it. We'll hear a rebuttal. You've got three minutes. Thank you, Your Honor. One way to look at remuneration and why there is remuneration in this case is to look at what would have happened if Oaklawn would have hired Dr. Martin. What would have happened, according to the allegations in the complaint, is that Dr. Hathaway would have withdrawn all surgical referrals to Oaklawn. It's also alleged in the complaint that after the decision was made not to hire Dr. Martin because of the threat to withdraw those patient referrals, the board chair called Dr. Hathaway and said, we are not hiring Dr. Martin and we will never hire Dr. Martin. The board chair did not say, according to the complaint, that the hospital was not going to bring in a service line for ophthalmology and that it would never do so. Part of that same conversation, we also have to include the truth that he said, I was never planning to move my patients in merging with LOI or LO Optical. That's part of the same set of conversations. We have to pick that one up too, don't we? There's nothing contradicting that or casting that in doubt. I'm right that we can account for that conversation too or am I wrong about that? There were conversations about LOI and that there would be an increase in surgical referrals if there was a merger. I'm making the point that as part of the same conversations where the threat occurs, he says, I was never planning to move my referrals elsewhere with the merger. I'm saying we can accept the truth of that, can we not? Answer that. It doesn't prove who wins. I just want to make sure I'm not missing something under 12B6. Whatever is alleged in the complaint should be accepted as true and all reasonable inferences should be drawn in favor of the relators. One of those inferences is the fact that it's not even an inference. It's explicitly stated that Dr. Hathaway said, I will pull my surgical referrals if you hire Dr. Martin. Faced with that threat, the hospital did what it had to do to induce those patient referrals by providing the remuneration that it was being threatened that it had to provide and that was not to hire Dr. Martin. I think the facts as I'm understanding them are that the referrals didn't really change. So in other words, I get the threat point and I get your point of what would have happened if they had not acceded to the threat but I'm still struggling with what that does to causation. I think you've already agreed that the casual will send you our stuff, you send you yours. It's not explicit, that's probably okay and what is complicated to me about the case is what was true before stays true after and unless you're going to damn what was true before it seems to me that's exonerating. Your Honor, can I answer the question? As set forth in the complaint, Dr. Hathaway's words are expressly that he is going to withdraw his surgical referrals and so the Oak Lawn Hospital has to accept that as true and it has to be accepted true for purposes of the complaint in 12B6 and so based on that we know that if Oak Lawn hired Dr. Martin according to the complaint there would be no referrals going from Dr. Hathaway in South Michigan to Oak Lawn Hospital for surgical services. We know according to the complaint that after the threat was made and after the inducement by the hospital was done by not hiring Dr. Martin there continued to be surgical referrals to Oak Lawn and it's fled with specificity and we've pled characteristic claims that were reimbursed by the federal government. I think we understand this point. So thank you very much. Thank you to all four of you for your helpful briefs. Thank you as always for answering our questions which we're very appreciative of and it's helpful to have good lawyers on a difficult case so thanks to all of you, we really appreciate it.